**M. Diane KOKEN, Insurance Commissioner, Commonwealth of Pennsylvania, Plaintiff**

**v.**

**LEGION INSURANCE COMPANY, Defendant.**

Commonwealth Court of Pennsylvania.

Heard Nov. 28, 2006.

Decided May 3, 2007.

Ordered Published Jan. 25, 2008.

---

Gaetan J. Alfano, Philadelphia, for plaintiff.

Douglas Y. Christian, Philadelphia, for intervenors, Mutual Indemnity Ltd. and Oregon Insurance Guaranty Association.

Jessica Carpenter, Portland, OR, for intervenor, Oregon Insurance Guaranty Association.

Bryan S. Neft, Pittsburgh, for intervenor, Oberman, Tivoli & Pickert, Inc.

OPINION BY Judge LEAVITT.

Re: Application to Intervene by Oregon Insurance Guaranty Association—Reconsideration of the Court's Order of June 16, 2005.

Before this Court is an Application to Intervene that was filed by the Oregon Insurance Guaranty Association (OIGA) to challenge certain actions taken by the Statutory Liquidator of Legion Insurance Company (In Liquidation). The OIGA asserts that the Statutory Liquidator's early distribution of Legion assets to state guaranty associations does not conform to the Liquidator's proposal for this distribution that was approved by this Court on February 10, 2006. Specifically, the OIGA asserts that the Liquidator has misapplied certain terms of the Refunding Agreement, a document that must be executed by any guaranty association that wishes to participate in the early distribution of Legion assets.

On June 10, 2006, the Court denied the OIGA's application to intervene for the reason that it appeared to lodge an untimely objection to the Liquidator's proposal for early distribution of Legion assets to state guaranty associations. A hearing on this proposal was conducted by the Court on February 8, 2006, and although the OIGA had advance notice of this hearing, it did not participate. The OIGA sought reconsideration of the Court's denial of its intervention, contending that the Liquidator did not provide full disclosure about her proposed early distribution of assets and that, in any case, it merely sought a clarification of that which had been approved by the Court.

The Court granted OIGA reconsideration. Thereafter, the Liquidator and the OIGA each filed memoranda of law in support of their respective positions on (1) whether the OIGA should be granted intervention and (2) whether the OIGA is

entitled to the relief it seeks. At the OIGA's request, oral argument was heard on November 28, 2006. The matter stands ready for disposition.

## BACKGROUND

On November 9, 2005, the Statutory Liquidator filed a "Proposal to Distribute Assets to State Guaranty Associations Pursuant to 40 P.S. § 221.36" (Proposal). The overall goal of the Liquidator's Proposal was to give "early access" to Legion assets to those state guaranty associations that had been paying claims owed under Legion policies both before and after Legion was ordered to be liquidated in 2003. A key element in the Liquidator's Proposal was the treatment of Legion's statutory deposits. Some states, including Oregon, require out-of-state insurance companies to post deposits with the state as a condition of gaining entry into that state's insurance marketplace. *See, e.g.,* Or.Rev.Stat. § 731.624 (relating to special deposits for foreign and alien insurers); Or.Rev.Stat. § 731.636 (relating to deposit or trusteed assets of alien insurers). Many states do not require statutory deposits or, if they do, had returned the deposits to Legion after the insurer was placed into receivership. Oregon still holds a Legion statutory deposit in the amount of approximately $11 million.

Statutory deposits are addressed in the Refunding Agreement that was approved by the Court on February 10, 2006, as part of the Liquidator's Proposal. First, the Refunding Agreement provides that the amounts distributed by the Liquidator will be reduced by the amount the guaranty association has received, or can receive, from a statutory deposit. Stated otherwise, the statutory deposit, which is a Legion asset, is intended to serve as the source of the guaranty association's early distribution of Legion assets in states still holding a Legion statutory deposit. Second, the Refunding Agreement obligates a guaranty association to return funds to the Legion estate should it thereafter be determined that the guaranty association's early distribution resulted in an over-payment, compared to other creditors with the same priority claim. Read together, these two provisions prevent a state guaranty association from receiving a preference by virtue of having access to a statutory deposit.

Every guaranty association, including the OIGA, was given notice of the Liquidator's Proposal and of this Court's hearing thereon. The National Council of Insurance Guaranty Funds, which represents state guaranty associations such as the OIGA, played an active role in the development of the Liquidator's Proposal. At the hearing on the Liquidator's Proposal, testimony was given and documents received; no objection was lodged by any state guaranty association, by the National Council or by any Legion creditor. On February 10, 2006, the Proposal was approved by this Court.

Thereafter, in April 2006, the OIGA filed the instant petition to intervene for two reasons. First, the OIGA claims that it cannot be required to return funds to the Liquidator if later found to have received more than its fair share of the Legion estate, as set forth in Paragraph 5 of the Refunding Agreement (Refund Clause). The OIGA asserts that the Refund Clause, if applied to it, would violate Oregon law. Second, the OIGA seeks a declaration from this Court that the Liquidator has misinterpreted Paragraph 4 of the Refunding Agreement, which authorizes the Liquidator to assign her interest in the statutory deposit as the method of early distribution (Statutory Deposit Clause).

The Court addresses, first, whether the OIGA presents a basis for intervention

and, next, the merits of its application for relief.

## INTERVENTION

■ There is no dispute that the OIGA had ample opportunity to comment on the Liquidator's proposed Refunding Agreement even before it was filed with this Court. Indeed, the OIGA takes credit for certain provisions in the Refunding Agreement. Although the OIGA asserts that the Liquidator did not provide financial spreadsheets to guaranty associations, as it had in prior insolvencies, this complaint only has relevance to the Statutory Deposit Clause, not to the Refund Clause. The OIGA offers no excuse for failing to lodge an objection to the Refund Clause of the Refunding Agreement at a time when it was still under review by this Court.

Nevertheless, the Court will grant OIGA intervention for the limited purpose of challenging the Liquidator's interpretation of the Refunding Agreement. This is because intervention for this purpose was expressly contemplated in paragraph 8 of the Refunding Agreement. It states, in relevant part, that this Court has

> exclusive jurisdiction ... with respect to the enforcement of this [Refunding] Agreement, or any issue or dispute arising out of or relating to this [Refunding] Agreement.

Refunding Agreement, ¶ 8. Because the OIGA's challenge is to the Liquidator's interpretation of the Refunding Agreement, intervention will be granted.[1]

## REFUND CLAUSE

■ The Refund Clause challenged by the OIGA states as follows:

5. *Each [State Guaranty Association (SGA) ] will return to the Liquidator,* within 30 days after receipt of a written request from the Liquidator, or within 90 days after receipt of such notice if it is necessary for the SGA to make an assessment, *any early access distributions* including any special/statutory deposits assigned, with any investment income earned on assets reimbursed, *the SGA has received (a) in excess of the amount determined by the Liquidator to be due the SGA,* (b) if that repayment later becomes necessary to pay claims of secured creditors or claims of a higher priority under 40 P.S. § 221.36(b)(1) or other relevant law, or (c) if that repayment later becomes necessary to fund any shortfall in the amounts reasonably required by the Liquidator to pay her administrative expenses for Legion and Villanova. No SGA shall be required to return any early access distributions that constitute reimbursement for its administrative expenses, provided that each SGA provides an accounting to the Liquidator within 30 days after receipt of the written request from the Liquidator demonstrating the portion of its early access distributions that have been attributed its administrative expenses. *Any amounts which are not paid within the timetable as specified above in this* paragraph 5 will accrue interest at the one-week LIBOR rate plus two percentage points as of the date such amounts were due. Such interest will accrue

---

1. Because we grant the OIGA intervention, we need not address the OIGA's assertions that it was misled by the Liquidator. Because the OIGA was listed as one of the guaranty associations "eligible for distribution" on Exhibit A of the Proposal, the OIGA contends that it reasonably expected distribution. This is not persuasive. First, Exhibit A recites no dollar amount. Second, the OIGA is eligible for distribution in accordance with the terms of the Proposal, *i.e.,* by way of an assignment of Legion's interest in the Oregon statutory deposit.

from the first date the payment is overdue until the date the unpaid and overdue amount is received by the Liquidator.

Refunding Agreement, ¶ 5 (emphasis added). This Refund Clause is mandated by Section 536(a) of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, (Article V), *as amended,* 40 P.S. § 221.36(a),[2] and the Court does not have discretion to excuse the OIGA from a contract term mandated by statute.

Section 536(a) authorizes a liquidator to make distributions to guaranty associations as assets become available.[3] These disbursements to the guaranty associations must be "equitable." Section 536(b)(3) of Article V, 40 P.S. § 221.36(b)(3). To that end, a liquidator is obligated to obtain

> *an agreement* [from the guaranty association] *to return to the liquidator such assets previously disbursed as may be required to pay the claims of* secured creditors ... and the proportional share of the assets disbursed required by the liquidator *to make equivalent distribution to creditors of the same class of priority as policyholders* in the event that the association may have received a disbursement of assets in excess of that available to pay all creditors of the insolvent insurer in the same class of priority as policyholders.

Section 536(b)(4) of Article V, 40 P.S. § 221.36(b)(4) (emphasis added).

The meaning of the refund requirement in Section 536(b)(4) is clear. If a Maine guaranty association, for example, has 75 percent of its claim against Legion paid, and the OIGA receives 85 percent on its claim, the pro-rata requirements in Article V will be violated.[4] All policyholder claimants, including guaranty associations, are expected to receive the same pro-rata amount paid on their claim. Accordingly, if the OIGA is reimbursed for 85 percent on its total claim payments made on behalf of Legion policyholders, and every other guaranty association is reimbursed 75 percent, the OIGA must return to the Legion estate the 10 percent excess amount.

Nevertheless, the OIGA asserts that Oregon law governs here. Oregon statute requires that Legion's statutory deposit be held to secure the payment of workers' compensation claims filed by Oregon citizens until all claims are paid in full. Or. Rev.Stat. § 731.608(3).[5] Because of this statutory mandate, the OIGA contends it cannot return excess funds to the Liquidator even if the result will mean that the OIGA will receive a higher pro-rata distri-

---

**2.** Section 536 was added by the Act of December 14, 1977, P.L. 280.

**3.** It states, in relevant part, as follows:
[T]he liquidator shall make application to the Commonwealth Court for approval of a proposal to disburse assets out of such company's marshaled assets, from time to time as such assets become available, to any guaranty association in the Commonwealth or in any other state having substantially the same provision of law.
40 P.S. § 221.36(a). However, these disbursements are allowable only if they
will not exceed the amounts necessary to pay the cost of litigation and the payment of claims of creditors either secured or with a

priority higher than the claims of policyholders.
*Id.* Here, in accordance with Section 536(a), the Liquidator applied for and received approval of an early distribution of assets once she determined that such a distribution would not impede her ability to satisfy the claim priorities in Article V.

**4.** The example assumes that the total amount owed by the Legion estate has been fixed either by agreement of the claimant and the Liquidator or by litigation of the claimant's proof of claim.

**5.** The relevant provision of the Oregon statute is set forth *infra,* at n. 8.

bution of Legion assets than any other guaranty association.[6] In effect, the OIGA asserts that Oregon law trumps the requirements of Article V, a position that cannot be accepted. Article V is dispositive of the disbursement of all Legion assets, even those in the form of statutory deposits.

The Court concludes that the OIGA's application for relief with respect to the Refund Clause in the Refunding Agreement lacks merit.[7]

## THE STATUTORY DEPOSIT CLAUSE

■ The OIGA believes it is entitled to an early access distribution for payment of its property casualty claims on the same terms as those guaranty associations operating in states where there is no statutory deposit. It explains that the $11 million statutory deposit in Oregon is dedicated exclusively to the payment of workers' compensation claims and cannot be used as the source of early distribution for the

payment of the OIGA's property and casualty claims.[8] Therefore, the OIGA believes its early access distribution for property and casualty claims should be calculated without regard to the statutory deposit that Legion posted in Oregon. The OIGA notes that "the Liquidator's apparent interpretation of the [Statutory Deposit Clause] effectively reduces the OIGA's entitlement to early access on property and casualty claims from $3,770,835 to zero." OIGA Application, ¶ 10. The OIGA contends that this result is "grossly unfair," "inconsistent with controlling Pennsylvania and Oregon Law" and "inconsistent with the terms of the documents themselves." Application for Relief ¶ 9. For her part, the Liquidator rejoins that the proposal is fair, consistent with Pennsylvania law, and to grant the relief sought by the OIGA would give the OIGA preferential treatment.

Oregon law, as noted, requires the Legion statutory deposit to be used to secure

---

6. The OIGA's position that it would be unlawful for *it* to return excess funds to the Liquidator is not very persuasive. Once monies pass from the statutory deposit to the guaranty association, those funds cease to be deposit funds subject to Oregon statute. The OIGA asserts that the reason for the Oregon statute is to make sure that every workers' compensation claim is fully paid. However, it does not follow that the only way the OIGA can achieve that goal is by access to the statutory deposit; the OIGA has a mechanism for raising funds to pay claims as do all guaranty associations. This could be the means to achieving Oregon's legislative goal of 100 percent payment of workers' compensation claims. Finally, as noted by the Liquidator, the OIGA can simply decline to sign the Refunding Agreement.

7. The Refunding Agreement was designed to treat all guaranty associations alike, regardless of the existence of a statutory deposit. To allow the OIGA to pursue its claim at this point will up-end the Liquidator's early distribution to guaranty associations, which has been underway for many months. To grant

the OIGA relief would be the equivalent of unscrambling an omelet.

8. Or.Rev.Stat. § 731.608(3) provides in relevant part:

Deposits made by insurers and reinsurers in this state under ORS 731.628 shall be held for the payment of compensation benefits to workers employed by insured employers other than those insured with the State Accident Insurance Fund Corporation to whom the insurer has issued a guaranty contract under ORS chapter 656. Deposits made by insurers and reinsurers under ORS 731.628 also shall be held to reimburse the Department of Consumer and Business Services, subject to approval by the Director of the Department of Consumer and Business Services, for costs incurred by the department in processing workers' compensation claims of insurers which have been placed in liquidation, receivership, rehabilitation or other such status for the orderly conservation or distribution of assets, pursuant to the laws of this state or any other state.

the payment of workers' compensation claims of Oregon employees injured in the course of their employment. The parties do not agree on the exact amount of the Legion deposit in Oregon or the total amount of workers' compensation claims that will be paid by the OIGA. They do agree, however, that the statutory deposit is more than sufficient to reimburse the OIGA 100 percent on every workers' compensation claim that it will ever have to pay on behalf of Legion policyholders.

The use of a Legion statutory deposit in the early access distribution is addressed in Paragraph 3 of the Refunding Agreement. Early access funds include funds received by a guaranty association from a liquidated statutory deposit. Paragraph 3 states as follows:

> 3. Each [State Guaranty Association] that joins this Agreement by signature to a counterpart of this Agreement will be entitled to receive, in accordance with 40 P.S. § 221.36, any early access distributions from Legion and Villanova made by the Liquidator in the same manner to the same extent as may be provided to insurance guaranty associations of other states. *Such early access distributions include funds received from liquidated special/statutory deposits of any state insurance department or from any ancillary receiver, actual distributions, whether direct or indirect, from the Liquidator classified as early access distributions,* and funds received under expense reimbursement agreements; provided, however, that nothing in this Agreement shall be construed to indicate that a subrogation collection or deductible reimbursement amount related to a covered claim of an SGA is an early access distribution.

Refunding Agreement, ¶ 3 (emphasis added).

The principle expressed in Paragraph 3 is a simple one. The mere existence of a special deposit is irrelevant. The guaranty association must be able to draw on the statutory deposit in order for the deposit to serve as the source of an early access distribution. Paragraph 4 of the Refunding Agreement reiterates the principle that the guaranty association must be "able to receive the deposit," stating, in relevant part, as follows:

> 4. If an SGA that joins this Agreement by signature to a counterpart of this Agreement is in a state whose Insurance Departments hold special/statutory deposits ("Deposits") . . ., the Liquidator may, in her discretion, assign to the SGAs all of the Liquidator's right, title, and interest in and to the Deposits held by the respective state insurance departments; *provided, however,* that the amount of Deposits so assigned shall not exceed the amount of each respective SGA's statutory obligations *and that the SGA is able to receive the deposit. The amount of assets of Legion and Villanova to be distributed to SGAs in states where insurance departments hold Deposits will be reduced by the amount of Deposits held by the respective state insurance departments.*

Refunding Agreement, ¶ 4 (emphasis added). Thus, if a guaranty association is "able to receive the [statutory] deposit," the early access distribution will be reduced by the amount of the deposit.

The OIGA claims that it is *not* able to use the Legion statutory deposit in Oregon to pay non-workers' compensation claims, and, therefore, its early distribution should *not* be reduced by the amount of the statutory deposit. However, the OIGA acknowledges that it is able to receive funds from the statutory deposit for the workers' compensation claims it is obligated to pay. The Refunding Agreement speaks to enti-

ties, *i.e.,* guaranty associations, and it does not state that the guaranty associations must be able to use the statutory deposit on every type of claim it pays. In effect, the OIGA's interpretation would add language to the Statutory Deposit Clause so that it would read: "able to receive deposits *for each type of claim* it is responsible to pay." The Court will not add, or delete, from the language of the document. The OIGA is "able to receive" funds from the statutory deposit for its workers' compensation claim payments and, thus, the Liquidator has properly reduced its early access distribution by the amount of the deposit.

If Oregon, like Pennsylvania, had one guaranty association established to pay property and casualty claims and another guaranty association to pay workers' compensation claims, the OIGA would not be in this position. Unfortunately for the OIGA, the Oregon legislature has made all types of property and casualty claims, including workers' compensation claims, the responsibility of the OIGA. Or.Rev.Stat. § 734.570 (obligating the OIGA to pay covered claims "existing at the time of an insolvency of an insurer . . . .").[9]

The OIGA also contends that the Liquidator's interpretation of the Statutory Deposit Clause violates a "fundamental tenet of liquidation estate asset distribution."

Application, ¶ 28. That principle is referred to in the Refunding Agreement, and it states as follows:

> The Liquidator believes the following agreements are statutorily required and necessary to confirm [Guaranty Association] Obligations, to reconcile the differences in the servicing and payment of obligations by or on behalf of various [Guaranty Associations] that have covered claims, *to avoid potential preferences among or within classes of claimants,* and to assure equality in the treatment of the claims of the [Guaranty Associations].

Refunding Agreement Recital ¶ D (emphasis added). The OIGA asserts that the Liquidator's position has created preferences by creating a subclass for property and casualty claimants in Oregon, effectively extinguishing *their* rights to an early distribution. Application ¶ 30. The Court disagrees. It is the OIGA that seeks to create an untoward sub-class for itself, *i.e.,* a guaranty association that does not have to return excess distributions it receives from the Legion estate.

First, the OIGA will receive an immediate 100 percent early access distribution for each workers' compensation claim payment it makes, via its access to the Oregon statutory deposit. If there were no OIGA,

---

9. It states, in relevant part, as follows:

The Oregon Insurance Guaranty Association shall:

(1) Be obligated to pay covered claims existing at the time of determination of insolvency of an insurer or arising within 30 days after the determination of insolvency. Except for covered claims arising *out of workers' compensation* policies, such obligation shall include only that amount of each covered claim that is less than $300,000. The association shall pay the full amount of any covered claim arising out of a workers' *compensation policy,* less any amount paid on a covered claim by the Work-

ers' Benefit Fund pursuant to ORS chapter 656. In no event shall the association be obligated in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises, or for claims arising after the policy expiration, policy replacement by the insured or policy cancellation caused by the insured.

(2) Be the insurer to the extent of the association's obligation on the covered claims and to such extent have all the rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.

Or.Rev.Stat. § 734.570.

presumably the injured employees would present their claims to the deposit holder. Instead, the OIGA submits them to the deposit holder by asserting the employee's claim by subrogation. If the OIGA receives 0 percent reimbursement on property and casualty claim payments, its pro-rata disbursement on all payments may reach, for example, 85 percent of its payments. If this pro-rata disbursement is equal to the pro-rata disbursement made to every other guaranty association, then the OIGA has no cause to complain. It will have received an equitable distribution.

Second, the OIGA must pay covered property and casualty claims in Oregon, but its obligation on each claim is capped at $300,000. Or.Rev.Stat. § 734.570(1).[10] Policyholders can, and presumably have, submitted proofs of claim for the amount of their loss that exceeds what the guaranty associations have paid to them. Because guaranty associations and policyholders share the same claim priority status, policyholders will be competing with guaranty associations for their fair share of the Legion estate. The OIGA's claim to speak on behalf of Oregon policyholders rings hollow.

The OIGA seems to overlook a fundamental principle of insurance company liquidations. All policyholder claims must be paid in their entirety before the next priority of claimants can receive any payment from the estate. Section 544 of Article V, 40 P.S. § 221.44.[11] It is possible that all policyholder claims will be paid in full at the conclusion of the liquidation. If not, then a pro-rata amount will be paid on each policyholder claim. If the pro-rata amount on policyholder claims is established at 75 percent, then no one policyholder and no one guaranty association can receive more than 75 percent on their proof of claim.

In sum, the OIGA's sub-class legal theory lacks merit. First, the OIGA does not speak for Oregon property and casualty claimants. Indeed, the interests of OIGA and Legion policyholders are not congruent. In any case, Oregon property and casualty policyholder claimants will have their proofs of claim paid in the same pro-rata amount as any Legion policyholder claimant. Second, the OIGA's position contradicts the statutory goal of "equivalent distribution to creditors of the same class of priority as policyholders," *i.e.*, guaranty associations. Section 536(b)(4) of Article V, 40 P.S. § 221.36(b)(4). The OIGA's position, taken to its logical conclusion, could result in OIGA receiving a higher percentage payment on its claim against the estate than would Oregon's non-workers' compensation policyholder claimants.[12] This is unacceptable and at complete odds with Article V.

Finally, the OIGA argues that the Liquidator is depriving it of its rights under Article V, which requires the Liquidator to give the owner of a statutory deposit a

---

**10.** The text of this provision of the Oregon statute is set forth *supra*, at n. 9.

**11.** Section 544 of Article V, 40 P.S. § 221.44 provides in relevant part that "[e]very claim in each class shall be paid in full or adequate funds retained for such payment before the members of the next class receive any payment."

**12.** For example, the final distribution to all policyholder claimants could be 85 percent of

the amount claimed. The OIGA would receive 100 percent on workers' compensation claims. If it also received 85 percent on non-workers' compensation claims, its pro-rata distribution would exceed 85 percent. Oregon's non-workers' compensation policyholder claimants, like all policyholder claimants, would receive 85 percent on their proofs of claim.

priority claim against that deposit. Section 561(b) states as follows:

> *The owners of special deposit claims against an insurer for which a liquidator is appointed in this or any other state shall be given priority against the special deposits in accordance with the statutes governing the creation and maintenance of the deposits.* If there is a deficiency in any deposit, so that the claims secured by it are not fully discharged from it, the claimants may share in the general assets, but the sharing shall be deferred until general creditors, and also claimants against other special deposits who have received smaller percentages from their respective special deposits, have been paid percentages of their claims equal to the percentage paid from the special deposit.

40 P.S. § 221.61(b) (emphasis added). The Oregon statute also requires that the deposit be held

> for the payment of compensation benefits to workers employed by insured employers .... and to reimburse the Director of Consumer and Business Services, ... for costs incurred by the department in processing workers' compensation claims of insurers which have been placed into liquidation ...

Or.Rev.Stat. § 731.608(3).[13]

The Oregon statute has been honored by the Liquidator. She has not sought to use the Oregon statutory deposit for any purpose other than the payment of workers' compensation benefits. There is no evidence to the contrary.

The OIGA has a choice to make. It can refuse to sign the Refunding Agreement and continue to receive reimbursement from the State of Oregon for every workers' compensation payment it makes. Alternatively, it can sign the Refunding Agreement and obligate itself to remit to the Legion estate whatever is necessary to equalize distributions to guaranty associations and all creditors having the same priority class as the OIGA. Finally, the OIGA could abrogate its claim against the Oregon statutory deposit by, for example, assigning its interest in the statutory deposit to the Liquidator. By eliminating its ability to access the statutory deposit on any claim, the OIGA would eliminate the statutory deposit as a factor. This would permit it to participate in early distributions in the same manner as would a guaranty association in a state where there is no statutory deposit.

The Court concludes that the OIGA's application for relief with respect to the Statutory Deposit Clause in the Refunding Agreement lacks merit.

## CONCLUSION

For the above-stated reasons, the OIGA's petition to intervene is granted, but the OIGA's application for relief must be denied.

## *ORDER*

AND NOW, this 3rd day of May, 2007, it is hereby ORDERED as follows:

1. The application to intervene filed by the Oregon Insurance Guaranty Association is GRANTED.

2. The application for relief filed by the Oregon Insurance Guaranty Association is DENIED.

---

13. The Oregon statute does not state that the deposit should be used to reimburse the OIGA nor does it describe the OIGA as the "owner" of a special deposit claim, as required to assert rights under Section 561(b) of Article V, 40 P.S. § 221.61(b).